May I please the court? This court must decide whether the Montana Department of Revenue waived its sovereign immunity to Timothy Blixseth's adversary proceeding under Section 303I when it filed an involuntary petition. Because the department did not waive its sovereign immunity under the consent by ratification theory through a litigation waiver or under the clear declaration test, this court must reverse the bankruptcy court's order. I'll Katz changed the conversation. It held that in bankruptcy, congressional abrogation is not necessary because the states agreed in the plan of the convention to waive their sovereign immunity in certain bankruptcy proceedings. What this means is that Section 106A of the bankruptcy code is no longer relevant to the sovereign immunity analysis in bankruptcy. The district court improperly relied on Section 106A and failed to analyze whether the Section 303I proceeding is the type of proceeding that the states agreed to waive their sovereign immunity to. Under Katz, the court held that under the bankruptcy clause, the states agreed to waive their sovereign immunity in in-rem proceedings or in proceedings that are necessary to effectuate the in-rem jurisdiction of the bankruptcy court. Counsel, are there any cases in the 9th Circuit from the 9th Circuit that have interpreted Katz in the way you are urging us to interpret it? No, Your Honor. This is an issue of first impression. I think there was actually a case of the BAP who might have suggested that they should analyze the framework we set out, but both the 3rd and the 11th Circuits analyzed Katz based on the three critical functions of bankruptcy, and I urge the court to adopt that framework. Katz didn't identify the range of proceedings in which the states agreed to waive their sovereign immunity, but identified bankruptcy's three critical functions, which are the exercise of exclusive jurisdiction over the debtor's property and the debtor, the equitable distribution of that property to the debtor's creditors, and then the ultimate discharge giving the debtor a fresh start. What the 3rd and the 11th Circuits held was that courts need to – this is the starting point for the framework of whether the states agreed in the plan of convention to waive their sovereign immunity. So a proceeding needs to relate to one or more of these three functions in order for the – to consider that the states deemed to not assert sovereign immunity in these types of proceedings. Counsel, I'm just curious. Why did the state maintain this litigation so long after it became apparent that it was not a viable claim? So I think the state had good faith basis to continue to pursue the involuntary petition when this went up to the 9th Circuit in 2019. The leading bankruptcy treatise and other courts supported their attempt to bring in a voluntary petition based on the amount that was not disputed. And so that really gets into another theory, the litigation waiver. We can pivot there if you'd like. I was just curious because the 9th Circuit did say that this claim was not a viable one. So this court did hold that a bona fide dispute as to amount, it could proceed on that basis. But there were some avenues which the department could have proceeded on the involuntary petition and like any participant in courts, they pursued those avenues. Turning back to Section 303I, adversary proceeding, this type of proceeding does not further any of bankruptcy's three critical functions. It doesn't decide or affect interest in Blix's property. It has no effect on the broader distribution of his property to creditors. And it doesn't protect the ultimate discharge. And what the framers would have understood when they ratified the bankruptcy clause was crucial to Katz's analysis. And this type of proceeding, a Section 303I adversary proceeding for damages, wouldn't be invented for 200 years. So it is hardly a core proceeding in the administration of a bankruptcy estate. And so the bankruptcy court should have analyzed whether under Katz the department and states in general agreed to not assert sovereign immunity in this type of proceeding. So, counsel, are you asking us to vacate the decision and remand it for the bankruptcy court to apply Katz? No, I'm asking this court to find that the states did not agree to waive their sovereign immunity. Well, I thought you said that the court didn't conduct the Katz analysis. Well, it did mention Katz. And at one point there was an offhand remark, which was not connected to the only mention of Katz, that this proceeding was ancillary to the bankruptcy court's interim jurisdiction. Would it be fruitful for us to remand this case for the bankruptcy court to do this analysis in the first instance? I believe that this court should decide that on its own. I think the 11th and the 3rd circuits both conducted the Katz analysis without remanding to the lower court to decide the issue. And I believe that this court could rightfully conduct the analysis itself and decide whether the states agreed to waive their sovereign immunity in this type of proceeding. So in the 3rd circuit case and the other case, there was the bankruptcy court had not done this analysis either? I don't recall whether the lower court conducted the analysis, but the— We generally like to review a decision from a court below before we wade into especially issues of first impression. And so that's why I thought it might be fruitful for the bankruptcy court, which has expertise in this area, to weigh in on this point before we decide it. Well, it's a de novo review, and I think— I understand that. I understand it's a de novo review, but we don't have anything to review. That's the point. And bankruptcy is such a specialized area that oftentimes it's helpful if we have the analysis of the bankruptcy court or the BAP before we decide, especially an issue of first impression. That's fair. Luckily, Judge Molloy understands. He's a bankruptcy judge. It's been a long time. So you have the benefit of his expertise. That's 30 years ago. The laws changed a lot. I'd like to turn to the second theory, which is litigation waiver. The key question here is whether the filing of the involuntary petition, which was a partial waiver of sovereign immunity, extends to a Section 303i adversary proceeding. So no matter the forum, when the state invokes the federal jurisdiction, it waives sovereign immunity to compulsory counterclaims. This is true in bankruptcy when a state invokes the bankruptcy court's aid, and it's true in federal court when a state files a complaint. Both the Seventh and the Federal Circuit held that when a state files a complaint, they have never been in court before, that it waives sovereign immunity as to compulsory counterclaims. But the Ninth Circuit—we don't have a case in the Ninth Circuit that says that, do we? No, Your Honor. In the bankruptcy analysis, in Ray Pegasus and in Ray Lazar, they held in the context of bankruptcy, a state waives its sovereign immunity to compulsory counterclaims. But again, that would be an issue of first impression in this court, whether when a state files a complaint, they waive sovereign immunity as to compulsory counterclaims. In this court, the compulsory counterclaim test—this court applies the logical relationship test, which is whether the second filing arises out of the same set of operative facts. And this analysis is easy. Mr. Blixith concedes that a Section 303i claim is not a compulsory counterclaim to an involuntary petition. The facts underlying the Department's claim was that Mr. Blixith had a tax deficiency, and the facts underlying the Section 303i claim is that the Department engaged in a conspiracy to ruin Mr. Blixith personally and financially, and engaged in bad faith conduct during the litigation. Also, a claim that arises or matures during litigation cannot be a compulsory counterclaim to the original claim. And in this respect, a Section 303i claim is just like a malicious prosecution claim, which is its common law equivalent. This court held that a Section 303i preempts all state law claims for damages, and a malicious prosecution claim cannot arise until the proceeding ends. And so, too, with the Section 303i claim, it inherently—a predicate element is that the original involuntary petition was dismissed. And so— Wouldn't it be—it wouldn't be much of a leap, though, from Lazar and Pegasus to say that a compulsory—you waived sovereign immunity as to a compulsory counterclaim. So, I mean, those cases held that when a state invokes the bankruptcy court's aid to file a proof of claim, it's to a compulsory counterclaim. And on the other end, we have a— Yeah, but, I mean, essentially that's what you're doing. When you started the involuntary bankruptcy, you basically are invoking the aid of the tax, right? Right. I mean, that's what I say. It's not much of a leap. Oh, it's not much of a leap? Yes. Oh, I thought you said it is a— But you're saying that— I agree. I agree it's not much of a leap. Yeah. But you're saying that the claim that was filed by Lixeth is by—does not come within that definition of a compulsory counterclaim. That's correct. And Lixeth conceded that. He said it is in no way a compulsory counterclaim. And so, along the entire spectrum of states invoking federal court jurisdiction, we have—if whether it's just a proof of claim in terms of bankruptcy, when they didn't file a petition but they were brought into the case as a debtor, or all the way to a filing a full-blown complaint in federal court. I mean, we have three circuits which suggest that the range of claims necessary for a complete determination is compulsory counterclaims. And so, I think it's easy to slot an involuntary petition on that spectrum and find that an involuntary petition only waives sovereign immunity as to compulsory counterclaims. So, when counsel said to the bankruptcy court that he believed it was correct that the state was waiving sovereign immunity, was he referring only to these compulsory counterclaims, or what was the reference to? I was about to transition there, Your Honor. So, I think—and just to jump ahead to your question—I think those statements are consistent with waiver as to only compulsory counterclaims. Mr. Butler stated that the department voluntarily submitted itself to the jurisdiction of the court, and the voluntary submission is a partial waiver as to compulsory counterclaims. Just to back up a little bit, the bankruptcy court improperly relied on Mr. Butler's statements when it was analyzing sovereign immunity. It conflated two tests, the litigation waiver test and the clear declaration test. It held that the department voluntarily waived its sovereign immunity as to—it was a clear and unequivocal waiver of its sovereign immunity, and that Mr. Butler's statements further reflected this clear and unequivocal waiver. That language, clear and unequivocal waiver, is unique to the clear declaration test, which requires a statutory enactment for waiver, and the Montana legislator has never waived sovereign immunity in a federal court, and so Mr. Butler's statements can't be used under the clear declaration test to find waiver. And as for whether it supports the litigation waiver, this court held in Ray Pegasus that later actions don't expand the scope of the state's initial act, which is filing invalid heritation. Like, just like in the Seventh Circuit in the Phoenix International case, the court to more than compulsory counterclaims by litigating the case. So later actions don't—or statements don't expand the scope of the state's initial waiver under the litigation waiver test, and that's essentially what the Bankruptcy Court held. And my rebuttal time is—just finish this point and I'll stop—that Mr. Blix's also argues that Mr. Butler's statements bolster the conclusion that the state of Montana waived the sovereign immunity by filing the involuntary petition. And so he also tries to fit his statements within the litigation waiver test, but under the litigation waiver, later actions don't expand the scope of the state's initial waiver, which focuses on the act that the state takes to invoke the Bankruptcy Court jurisdiction. All right. Thank you, counsel. Good morning. May it please the Court, Nathan Schultz, on behalf of the appellee, Timothy Blixeth. I'm having some deja vu this morning, and it's not just because my Michigan Wolverines won a Rose Bowl game and a national championship for the first time since I was a senior. It's more so because four and a half years ago, I was before the Court in Seattle arguing that it should affirm the dismissal of the involuntary petition for a very simple reason, and that is that the law doesn't permit Montana to split up a disputed tax liability into separate components to manufacture an undisputed claim for purposes of filing an involuntary petition. Today, I'm here in Pasadena, not far from the Rose Bowl, arguing to this Court again for a very simple reason, that it should reject the frivolous appeal that we have here today, which is that— Well, counsel, I wouldn't say this is frivolous. This is a very challenging case, and it's an issue of first impression. The CATS analysis is in play, so I wouldn't say it's frivolous. I think that we need some help from the parties in analyzing whether or not CATS precludes the deprivation of sovereign immunity. Well, that's a great place to start, Your Honor, because CATS is not required for this Court to decide in favor of Mr. Blixith today at all, and I'll explain why. CATS is a bankruptcy clause analysis. It drives the question of whether the states consented and waived sovereign immunity for bankruptcy matters under the bankruptcy clause. Now, we talked about why we think that is also the case here, but that's not the primary thrust of why we should prevail today. The primary thrust is one essential fact and one controlling principle of law that don't have anything to do with CATS, and the essential fact is Montana authorized that filing of which is a separate aspect of sovereign immunity waiver. It doesn't require the bankruptcy clause at all. It requires just looking at did the sovereign invoke jurisdiction, and this is Clark v. Barnard, 1883 case. That's the case we're here to talk about today primarily. I'm happy to get into CATS issues, but I want to make sure it's clear that the Court understands why we don't think you need to reach CATS. Tell us why the litigation waiver encompasses, so opposing counsel says that the litigation waiver only encompasses compulsory counterclaims and that your client conceded that this was not a compulsory counterclaim. The second thing is true. We agree this isn't a compulsory counterclaim. The first thing is not. Compulsory counterclaim analysis, especially in bankruptcy, arises from a very different set of facts. What usually happens when you reach that analysis in bankruptcy is that a state is forced to confront a decision whether it should file a proof of claim or not. Bankruptcy jurisdiction's already been invoked. There's a bankruptcy case out there, and as Judge Malloy knows, you set a bar date in a bankruptcy case that says if creditors want to participate in recovery from the bankruptcy case, you have to file a claim, and that's a proof of claim. That happens only after jurisdiction's already there. So a proof of claim is a responsive act. It's not an offensive act. It's a responsive act. And so the state has to decide, do we want to submit ourselves to bankruptcy court jurisdiction, upside, collect maybe some money from the bankruptcy case, downside, some amount of sovereign immunity waiver? That's very different here. They weren't forced to confront that decision. They initiated this. They invoked the jurisdiction. The issue still is, in invoking the jurisdiction, did that waive sovereign immunity for claims that were not compulsory counterclaims? Exactly. That's exactly the issue. And there is no textual jurisdictional case law policy or conduct, whether you think that's relevant or not, support for the idea that Section 303i claims, which is what Mr. Blixith is asserting, don't fall within the complete determination of the case. Because that's what we're talking about here. I agree, Your Honor. Complete determination of the case. Well, that's a different issue than whether or not it's a compulsory counterclaim. It is. And I don't think compulsory counterclaim is relevant, because that is applied in situations where it's not clear whether what's being brought by the party asserting that sovereign immunity has been waived, my client here, it's not clear whether what they're trying to assert should fall within a complete determination of the case. What case says that, that in the instance of a litigation waiver, the compulsory counterclaim analysis is not relevant? What case says that? There is no case. We're trying to grapple with these issues, and so it's helpful to us if you can give us some legal guidance rather than just theories. So that's why I always ask, what case are you relying upon to support this argument? We don't need a case, Your Honor, because there's a statute. We need a case. No, Your Honor, there's a statute, and so we don't even have to get to a case. But you're mixing apples and oranges, because, yes, there's a statute, 303. That's the bankruptcy clause argument. And then there's the litigation waiver, which is separate from 303, the way I look at it. You're trying to say 303 is a litigation waiver? Yes, by filing the petition and commencing the case, there's a litigation waiver, and the question is, what's the scope of that litigation waiver? The answer is, it has to include 303i claims, and here's why. One, it's in the same statute. So it's not like Montana didn't know that 303i was in play. They had capable bankruptcy counsel. They knew. It says right in the statute, if you file an involuntary case and it doesn't stick, you're subject to these claims coming back. So textually, we already know. That's part of the same thing. Second, I'll give you a case, Your Honor. There is a case. But that's in the instance where there is not sovereign immunity in play. That's the wrinkle here, is that generally we don't have a litigant who has sovereign immunity. And so that's the wrinkle here, that you're asking, I think you're asking us to ignore the fact that sovereign immunity is in play here. I don't think I'm asking the court to ignore the fact that sovereign immunity is in play. It's a fundamental question. And again, I'll go back to some analogies, and I'll give you a case that I think fully supports our position. So again, the reason you need the compulsory counterclaim analysis is for the distinguishing basis that counsel raised. Compulsory counterclaims aren't part of the original case, not case, but claims that were asserted to start the litigation that's in question. They're separate, and they're coming back another way. 303i claims are embedded in the fact that an involuntary case was filed in the first place. And again, I think the Rule 11 and other sanctioning power of the court requirements are good analogies here. If counsel's interpretation is correct, a state could initiate litigation, commit sanctionable conduct under Rule 11, and say, I didn't waive for Rule 11. And Rule 11 is... That's what we have here. But it's very close, Your Honor, because that involuntary case was filed improperly. That's what this court held. And this court said this was exactly the type of conduct that 303b, which is the provision that talks about eligible creditors, it was designed to prevent that. And just to be clear, this was a $200,000 audit issue that they tried to leverage for a $56 million claim. So this wasn't a close question at the end of the day. And so, and I'll give Your Honor a case to look at, which is the Sunbelt Developers case, which is 608f3rd463. It's not in the sovereign immunity context. Is it in your brief? It's been cited by the parties, yeah. And that case talks about 303i2 damages, which are claims for punitive and consequential damages that result from the filing of an involuntary petition that was improper. And there's also 303i1, which says you can get attorney's fees. And what Sunbelt looked at was, can you get attorney's fees under 303i1 for prosecuting 303i2 damage claims against an involuntary petitioner that failed? And what it says is... Was it a government entity? Again, Your Honor, it's not a sovereign immunity case. But it's important because it says those i2 damages, which don't happen until after the case is over, right? After the case has been dismissed. Not over, but the petition's been dismissed. Those are part of the same case, and that's why you can include them within your attorney's fee damages. There is no way to separate. And I'll give you a jurisdictional example. Mr. Blixith didn't independently invoke the Bankruptcy Court's jurisdiction to seek this relief. The Bankruptcy Court retained it when it dismissed the involuntary petition for the third and final time. And notably, this was, I think, the only opportunity I know of where Montana didn't take an appeal from that decision. If they thought that the court had no jurisdiction over 303i claims, they knew they were going to be brought. They knew that was going to happen in 2011 when Judge Markell said, not just, are you waiving sovereign immunity kind of generally? Judge Markell specifically said, as to 303i damages, this kind of stuff. Well, that's different. The lawyer can't waive sovereign immunity for the court of state. Right, but it shows that they understood the issue and that it was out there. And so they knew. That colloquy was kind of not clear. I mean, the judge was of the view that there was a waiver. The attorney did not unequivocally say that, so I'm not sure that that gets you where you want to be. And my only point, I'm not trying to rely on that as a standalone basis for the court to decide the case today, but the question is, you know, did Montana understand that the court was going to be asserting jurisdiction over 303i claims? It could have taken an appeal from that third dismissal order, Your Honor. But the issue, we look at jurisdiction independently, and we have to determine whether there was a waiver. And the bankruptcy court said, regardless of what the attorney said, so what they must have understood doesn't help us in terms of, as a legal matter, whether or not sovereign immunity was waived. Right, and so I think, you know, it's important also to consider that Mr. Blixthof couldn't bring these claims anywhere else. So if the court says, as Montana's arguing, that a sovereign can file a nuclear action, that's what involuntary bankruptcy is. It is a very strong, extreme remedy. And states already have, taxing authorities, really broad remedies, right? But they're saying, if you're going to take this, you know, very serious action, that there are consequences to that. And if the court says, well, Montana can use that mechanism, the benefit, the sweet, you know, benefit we cited, then you, but you're going to deny the ability and let them preserve sovereign immunity for someone to come back and assert damages later. But that's what sovereign immunity is for, to protect states from having to pay damages from the coffers of the public fisc. Not when they take offensive action. That's the big difference here. The only premise for Mr. Blixthof's claims here is the fact that they took inappropriate offensive action against him and failed. That's the only premise for a 303i claim. You can't get there without it. But isn't, a lot of the case law analogizes 303 actions to malicious prosecution. He could have, Montana could have done basically the same thing by suing him and making the same allegations in state or federal court. And a malicious prosecution claim is a tort claim. Isn't that really what you're doing here, bringing a tort claim for which arguably Montana is immune? Well, first of all, tort claims and malicious prosecution claim is preempted by 303i. All the case law agrees with that. But it's analogous to it, though. He couldn't bring that. And second, I don't recall a case cited that says a malicious prosecution claim is precluded by sovereign immunity because it's not a compulsory counterclaim. I think Montana's trying to string together two different concepts to get the court to conclude that there's no way to get from here to there. It doesn't matter whether it's a compulsory counterclaim because it's an embedded remedial part of the essential underlying action. It was already included there. And again, Montana, I take Judge Maloney's point, I agree with it. Montana could have done a lot of other things here. They were the ones that chose to try to avail themselves of the benefit of 303b, involuntary bankruptcy. How could the court possibly conclude that in doing so, they can preserve the ability to defend themselves against a remedy that's not just out there in tort land, depending on common law or state or federal statute or something else. It's embedded right in the statute that they used to try to assert this. But doesn't that get us back to the original issue, which is, was 303i authorized under the bankruptcy clause? Because Congress, I mean, the Supreme Court now seem to tell us, unless the bankruptcy clause authorizes it, you can't do it. I don't think it does, again, because the bankruptcy clause analysis, every other case, I haven't seen a single case where the bankruptcy clause analysis is applied to an offensive action by a state. It's always responsive to the fact that there's already a bankruptcy case there. Not that they initiated a case or even filed an adversary proceeding in the bankruptcy case, necessarily. And so, but even under the bankruptcy clause, how could it be that the framers intended to protect debtors from going to debtor's prison, give them a fresh start, have valid uniform exercise of bankruptcy court jurisdiction and the discharge injunction, and then say a state can improperly try to throw somebody into bankruptcy and impose all those penalties on them and burdens, but then protect themselves? Is the action under 303i part of giving a debtor a fresh start, or is it the debtor taking action against a creditor? It's a fresh start because the only reason Mr. Blixted needed any kind of fresh start here is because of what Montana did. They put him into bankruptcy for more than a decade. He couldn't conduct business. He was under the cloud of a bankruptcy case, which vastly, you know, affects a person's ability to live their life and conduct their business affairs, and that's why Congress put in 303i in the first place, because it's such an extreme remedy, they wanted to make sure that there was a remedy for debtors if it was done improperly, and if the court allows Montana to shield itself from this, I think it clearly calls into question the bankruptcy court's, the legitimacy of the bankruptcy court's jurisdiction in the first instance, which is an in-rem jurisdiction, because now states and government actors can use this without any fear of any consequences, and they already have more powers than other creditors, so you're number one, disadvantaging other creditors who can't do the same thing, and two, you're really giving the states, instead of sovereign immunity, this would be sovereign impunity. It lets them exercise this extremely consequential and prejudicial remedy without any risk of, you know, remedial effort on the part of the debtor, and, you know, that can't be what the framers intended, and it's also just not consistent with the way that the complete determination of the case analysis works. There's no situation like this that's in the case law. I think, Your Honors, because when I, if I hadn't seen this with my own two eyes, I wouldn't have been able to believe a state would take this position, that they can try to avail themselves of bankruptcy court jurisdiction, but then not answers for the consequences of that. It just doesn't fit the bidder with the suite analysis. That's what sovereign immunity is all about, that the state is immune from money damages for actions that are brought against the state. It happens all the time that people sue the state for money damages, and sovereign immunity precludes a recovery. Not based on the state exercising and invoking a court's jurisdiction. That's the difference here. These aren't monetary damages based on extra-judicial, extra-litigation circumstances, and that's why the compulsory counterclaim analysis is so clear. Well, that's, to me, that's why Katz's, the Katz analysis is important, because what is, what's the sovereign immunity waiver in the bankruptcy realm? I think that's part of the equation as well. That's the difficulty I'm having, and this is a very difficult and challenging case, because of all of the different moving parts that are in there. I'm not sure I agree with you that we can totally disregard Katz. I'd encourage you all to take a close look, and I trust the court will, because, again, Katz, if you look at it, and the cases, Nordic Village, a lot of those Supreme Court sovereign immunity cases, they concern the debtor attempting to get a recovery from a state that is not responsive to something that the state did invoke in jurisdiction. Again, the state's just trying to collect money, so file the proof of claim, or there was an avoidance action, preference of fraudulent transfer, and the state didn't sign up for it. I kind of look at it as a reasonable expectations question at the bottom of it. What's the reason for the complete determination piece of Clark v. Barnard and the litigation waiver doctrine? And the answer, I think, in part is, you know, states shouldn't, the whole point of sovereign immunity, right, is to prevent states from being hailed into courts, you know, where they haven't agreed to do it, because the sovereigns are entitled not to do that. That's just not a consideration here, because they already hailed themselves into the court. They invoked it. They said, you know, and they knew what the consequences of that would be. So there's not an expectation interest to protect, number one, and number two, I think a lot of the compulsory counterclaim analysis is about, do the facts overlap, and so do we have efficiency here, right? Is this, you know, necessary to determine the same stuff, to reach a comprehensive ruling? Otherwise we have things split up, or even worse, a forfeiture. And that's really what we're talking about here. If the court grants sovereign immunity, which I really think is sovereign impunity to Montana in this circumstance, then Mr. Blixeth has no remedy that he can pursue for what happened here. Now that may be true in lots of sovereign immunity cases, but that doesn't have to do with the fact that the state availed itself of federal bankruptcy court jurisdiction to pursue remedies offensively against Mr. Blixeth. We understand your argument, counsel. Do you think it would be fruitful for us to remand for the bankruptcy court to analyze this issue in the first instance? Before we had this dialogue today, I would have said categorically no, because, you know, from our perspective, it's so clear, and the parties did, you know, fully brief the merits of this. But the district court, but the bankruptcy court didn't resolve this. The bankruptcy court did not undertake a CATS analysis. I think if the court concluded that CATS is required, which I understand, Your Honor, clearly understands my point that it's not. We wouldn't have to. We wouldn't have to. We would just need to conclude that maybe it's relevant, maybe it's not, but I can't see why it wouldn't be useful to have the bankruptcy court take a look at it as being the relative expert. I should have put it a different way. I'm sorry. Right. Exactly. Yeah, I should have put it differently, which is if the court is not comfortable concluding that my client should prevail notwithstanding CATS, that CATS may be relevant, then yes, I think, you know, the court could remand for the bankruptcy court to conduct that analysis. The bankruptcy court could look at all of these issues. Now, in all fairness, I feel the issues have been fleshed out more on appeal than they were before the bankruptcy court, and that's part of the challenge to me is that I would feel more comfortable in your phraseology if the bankruptcy court, which has the expertise in this area, first analyzed it, and then we could review it after that, and so that's why I was asking that you think it might be fruitful to return this to the bankruptcy court to do the analysis in the first instance. I think that under that scenario, I think that it could be helpful. Yes, Your Honor. Thank you, counsel. All right, rebuttal. The crux of my friend's contention that the compulsory counterclaim analysis does not apply here is that it doesn't apply when a state takes offensive action, but circuits have already held that when a state takes offensive action by filing a complaint, and there's no more offensive action than that, that the compulsory counterclaim analysis applies. The Fifth Circuit in Karamark said explicitly that what is required for the complete determination of the case is limited to compulsory counterclaims. And so to Judge Molloy's point earlier, an involuntary petition is much closer to filing a proof of claim in bankruptcy court, where a state is invoking the in-rem jurisdiction of the court than to filing a complaint, and this court has held that the waiver is as close to compulsory counterclaims. Well, counsel, what's your response to opposing counsel's observation that the remedy that they seek is included within the same provision that you use to invoke involuntary bankruptcy? And so you could not have been unaware that this was part of the statutory scheme. And so why isn't that akin to a compulsory counterclaim? So a predicate of a 303i claim is that the petition was dismissed. It doesn't become a claim that's live that you can bring until the claim is dismissed. Just like a malicious prosecution claim, it requires that the previous proceeding ended before you can bring one. And to address Your Honor's points I think made earlier, that the fact that Section 303i exists and is in the Bankruptcy Code doesn't do anything for the sovereign immunity analysis because Congress tried to waive a 303i claim in 106a. Its inclusion in the statute on its own doesn't do anything for sovereign immunity. The fact that it exists and it's there, if this court were to hold that the fact that it's merely included in Section 303 waives sovereign immunity, that would undo congressional abrogation. Congress needs to state clearly and unequivocally that states have waived their sovereign immunity in a statute. But 303i is not embedded in 303b is what you're saying. No it's not. It's a separate provision. It comes later. It's the full statute. Here's Section 303. And Congress tried to abrogate it in Section 106a by saying the states are deemed to have waived their sovereign immunity in all these proceedings. If the fact that it existed on its own means that the states waive their sovereign immunity, then Congress wouldn't have needed to include it in 106a. Not that 106a is relevant to the analysis anymore. And this court, my friend mentioned Southern California Sunbelt Developers. Section 303i claim is not, this court rejected the analogy to Rule 11. It said it's more analogous to a fee-shifting provision. And we don't dispute that courts have the authority to regulate the conduct of peering of sovereign immunity. But it's not a sanctioned statute. The court can't impose 303i damages or attorney's fees on its own. It needs to be brought by the party. And that can only be done after the involuntary petition. And so just like a malicious prosecution claim, it's not compulsory to the original voluntary. And I want to just touch on one thing that Judge Rawlinson said, if I could have it. That inherent in sovereign immunity is some unfairness. The 11th Amendment arose out of the Chisholm v. Georgia case, which shocked the nation. And granted, there are some rules in litigation that favor the states, that they are entitled to some protection. And that's a decision that our country made in the constitutional structure a long time ago. And so I get that it does bring up some questions of fairness and how they are treated as with other creditors. But that's inherent in the doctrine of sovereign immunity. We ask that this court reverse the Bankruptcy Court's order. And we would appreciate if this court would conduct the analysis themselves. Thank you. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court that completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: RAWLINSON, Melloy, THOMAS